UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CATHLEEN GUSTAFSON R.N., <br> Plaintiff, <br><br> vs. <br><br> DALLAS BEHAVIORAL HEALTHCARE HOSPITAL, L.L.C. AND SIGNATURE HEALTHCARE SERVICES, L.L.C. <br> Defendants. | Civil Action No.: <br><br> JURY TRIAL DEMAND |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, CATHLEEN GUSTAFSON R.N., Plaintiff, suing DALLAS BEHAVORIAL HEALTHCARE HOSPITAL, L.L.C. and SIGNATURE HEALTHCARE SERVICES, L.L.C., Defendants. In support of her claims, Plaintiff respectfully states the following:

### Introduction

1. This lawsuit involves a nurse who was retaliated against by termination after she reported violations of law at the hospital where Plaintiff was employed. She also reported numerous situations where she knew or believed in good faith that patients were exposed to substantial risks of harm as a result of substandard care at that hospital. She also reported unprofessional conduct and substandard care to the Texas Board of Nursing. She also reported and refused to participate in improper billing to Medicare and Medicaid. At all pertinent times, Plaintiff's employers were Dallas Behavioral Healthcare Hospital, L.L.C. and Signature Healthcare Services, L.L.C., Plaintiff worked

at the Signature psychiatric hospital known as "Dallas Behavioral Healthcare Hospital" (located in DeSoto, Texas). In this action, Plaintiff generally asserts:

A.) that Defendants violated two of the Texas Nurse Practice Act anti-retaliation provisions;

B.) that Defendants violated the Texas Health and Safety Code hospital anti-retaliation provisions; and

C.) that Defendants violated the whistleblower provisions found in the Federal False Claims Act and the Texas False Claims Act.

### Jury Demand

2. Plaintiff demands trial by jury on all issues so triable.

### Parties

3. Plaintiff Cathleen Gustafson is a resident of Tarrant County, Texas. At all times she has been and is a Registered Nurse, licensed by the State of Texas.

4. Defendant Dallas Behavioral Healthcare Hospital, L.L.C., ("the Hospital") is a psychiatric hospital with its principal place of business in Desoto, Dallas County, Texas. Defendant Dallas Behavioral Healthcare Hospital, L.L.C. may be served through its registered agent of record, Northwest Registered Agent, L.L.C., 700 Lavaca, Suite 1401, Austin, Texas 78701.

5. Defendant Signature Healthcare Services, L.L.C., is a foreign corporation which at all pertinent times did business in Dallas County, Texas. Defendant Signature Healthcare Services, L.L.C. may be served through its Registered Agent of record, Northwest Registered Agent, L.L.C., 700 Lavaca, Suite 1401, Austin, Texas 78701. Defendant Signature Healthcare Services, L.L.C. and was a co-employer of Plaintiff.

## Jurisdiction and Venue

6. Jurisdiction is proper in the United States District Court for the Northern District because this case presents a federal question under 31 U.S.C. § 3730(h)(1), as amended. This Court has concurrent jurisdiction over Plaintiff's state law claims arising out of the same facts and transactions.

7. Venue is proper in the Northern District because the acts and omissions at issue this case occurred within the geographical boundaries of the Northern District.

## Factual Allegations

8. Prior to January 29, 2016, Plaintiff worked in the Outpatient Department of the Hospital as an Outpatient and Partial Hospitalization Program Nurse. In that position Plaintiff observed, reported, and refused to participate in Medicaid, Medicare, and insurance fraud. She also insisted upon a transfer out of that position because the nursing schedule for the department did not allow sufficient time for nurses to carry-out physician orders, communicate with and educate patients and families, adequately assess patients, keep the patient charts in order, and deal with multiple important administrative details such as securing approvals for ordered medications by acting as a liaison between insurance companies and pharmacies. Plaintiff informed Human Resources both that she insisted upon being reassigned and about her reasons for demanding to be reassigned.

9. On or about February 2, 2016, Plaintiff accepted another position at the Hospital as Director of Utilization Review, and started the same day.

10. On or about February 22, 2016, Plaintiff was replaced as Director of Utilization Review by Jessica Baez, an un-credentialed individual, who had no healthcare licenses.

11. On or about March 2, 2016, a Hospital Utilization Review Coordinator, named Garrett Robinson, RN, quit working at the Hospital in part because Jessica Baez had decided to change his status from hourly to salary. As a result, Plaintiff assumed full responsibility for the Northstar account, an exceptionally burdensome assignment. During the next three to four weeks, Plaintiff observed and reported multiple concerns about patient and staff safety. Plaintiff was specifically concerned among other things with injuries in the adolescent units, and also about the routine co-mingling of male and female adolescents.

12. On or about April 8, 2016, another Hospital Utilization Review Coordinator, George Creach, L.P.C. quit work at the Hospital, because Jessica Baez had announced that she intended to give the Northstar account to him, and because she had announced further that the Utilization Review Department would be taking responsibility for all discharge planning. The addition of discharge planning substantially increased the workload of the Utilization Review Coordinators.

13. Upon George Creach's departure, Plaintiff also inherited utilization review in the adult units, including the Gerontological Psychiatric unit. In those units, Plaintiff immediately encountered overwhelming evidence of non-compliance with Medicare regulations and blatant Medicare fraud. It was also obvious to Plaintiff that the standard of care on the Gerontological Psychiatric unit was far below industry standards. Patients and staff were at risk for injury very frequently when hands-on care was being provided. Standard equipment and supplies were often not available to safely and hygienically provide nursing care during the entire four weeks Plaintiff observed those units. Plaintiff observed the nursing staff on those units repeatedly implore their shift supervisors for needed supplies and equipment. Plaintiff also observed nursing staff, on

more than one occasion, calling the Chief Nursing Officer from a phone on the unit to ask for urgently needed equipment and supplies. Further, Plaintiff informed her supervisor, Jessica Baez, almost daily, that the majority of the patients on the Gerontological Psychiatric unit had "dementia" and that they should *never have been admitted* to Dallas Behavioral Healthcare Hospital, L.L.C. because psychiatric care was not needed for these patients. Plaintiff voiced her objections to the Hospital billing Medicare and Medicaid for unneeded psychiatric care.

14.     On or about April 28, 2016, Plaintiff observed an administrative staff member of the Hospital who was not medically credentialed, override a doctor's order to transfer a medically compromised Medicare patient to a medical-psychiatric bed at another facility. The administrative action, overriding a doctor's Order, actually occurred twice, although it was obvious that the patient's medical needs could not be adequately met at Dallas Behavioral Healthcare Hospital and the doctor's transfer order was correct and necessary for the patients' health. These actions constituted such a flagrant disregard for the patient and for nursing, medical, and hospital protocol, and appropriate practices that Plaintiff felt compelled to make a formal complaint to the Texas Board of Nursing.

15.     On or about May 2, 2016, Plaintiff's completed a complaint form which was faxed to the Texas Board of Nursing. That night, Plaintiff received a voicemail from one of the nurses that Plaintiff named as a witness in the complaint. The witness was working the evening shift, and called Plaintiff to say, "They know about the complaint."

16.     On or about May 9, 2016, Plaintiff returned from a vacation. Plaintiff then received a letter from the Texas Board of Nursing which stated that a Board of Nursing Investigator had been assigned to her complaint. The letter also gave Plaintiff the name and contact information for the Investigator. The letter was dated May 5, 2016.

17. On or about May 10, 2016, Plaintiff was fired based upon a trumped up false allegation of racial misconduct, specifically that she made a racist remark. Plaintiff never made any kind of inappropriate racial remark. However, Plaintiff had commented truthfully in good faith about a pattern of racial favoritism shown by management of the Hospital.

## Claims

### Federal False Claims Act Anti-Retaliation

18. As alleged above in detail, Plaintiff Cathleen Gustafson was fired because she engaged in lawful efforts to stop false and fraudulent claims from being presented to the United States of America through its Medicare program. Those actions were protected under 31 U.S.C. §3730(h)(1), as amended by the Fraud Enforcement and Recovery Act of 2009 (FERA). Plaintiff is therefore entitled to relief pursuant to 31 U.S.C. §3730(h)(2).

### State False Claims Act Anti-Retaliation

19. As alleged above in detail, Plaintiff was fired because she engaged in lawful acts taken to stop fraud on the State of Texas through its Medicaid program. Those actions were protected under the Texas Human Resources Code §36.115(a). Plaintiff is therefore entitled to the relief pursuant to Texas Human Resources Code §36.115(a)(1) and (2).

### Medical Allegations

### Health and Safety Code Anti-Retaliation Law

20. Section 161.134 of the Texas Health and Safety Code provides in pertinent part that a Texas hospital may not terminate, discipline, or otherwise discriminate against an employee for reporting a violation of law. As alleged above in detail, Defendants Dallas Behavioral Healthcare Hospital, L.L.C. and Signature Healthcare Services, L.L.C.

violated that law by discriminating against Plaintiff, then terminating her after she reported conduct that was both unethical and illegal.

### Nurse Practice Act Anti-Retaliation Laws- First Count

21. Section 301.4025(b) of the Texas Occupations Code (Nurse Practice Act) provides in pertinent part that a nurse may report to the nurse's employer (and others) any situation which the nurse has reasonable cause to believe exposes a patient to substantial risk of harm as a result of failure to provide patient care that conforms to minimum standards of acceptable prevailing practice, or to statutory, regulatory or accreditation standards. Sections 301.4025(c) and 301.413(b) of the Texas Occupations Code (Nurse Practice Act) provide that a person may not suspend or terminate the employment or otherwise discipline or discriminate against a person who reports under Section 301.402(f) without malice. As alleged above in detail, Defendants Dallas Behavioral Healthcare Hospital, L.L.C. and Signature Healthcare Services, L.L.C., violated those laws by discriminating against Plaintiff, then terminating her after she reported such sub-standard care.

### Nurse Practice Act Anti-Retaliation Laws- Second Count

22. Section 301.413 (b) of the Texas Occupations Code (Nurse Practice Act) provides that a person may not suspend, terminate, or otherwise discipline, discriminate against or retaliate against a person who makes a report in good faith to the Texas Board of Nursing. As alleged above in detail, Defendants Dallas Behavioral Healthcare Hospital, L.L.C. and Signature Healthcare Services, L.L.C. violated that law by retaliating against Plaintiff and terminating her after she made a good faith report to the Texas Board of Nursing.

### Compensatory Damages

23.   The above-described attack on Plaintiff's personal and professional identity has caused her substantial emotional and physical distress. The wrongful discharge of Plaintiff has also caused significant tangible compensatory damages including loss of wages and benefits, among others.

### Exemplary and Punitive Damages

24.   Each Defendant acted with conscious indifference to the rights, safety, or welfare of the Plaintiff Cathleen Gustafson and with actual subjective awareness that their conduct would likely cause harm to the Plaintiff Cathleen Gustafson. Alternatively, Defendants acted with the degree of malice necessary to support an award exemplary and punitive damages and such damages should be awarded in this case for the good of the public to make an example of Defendants and to punish each Defendant for its willful, self-serving, malicious misconduct.

### Prayer

WHEREFORE Plaintiff prays that:

1. Defendants be summoned to appear and answer the allegations in this Original Complaint;

2. Plaintiff be awarded injunctive relief, including reinstatement and an Order forbidding any further acts of retaliation against her;

3. Plaintiff also be awarded both tangible and intangible compensatory damages;

4. Plaintiff also be awarded double back pay and interest on back pay as allowed by federal and state law;

5. Plaintiff also be awarded exemplary damages;

6. Plaintiff also be awarded statutory damages;

7. Plaintiff also be awarded punitive damages, with due regard to the net worth of each Defendant to assure that such damages are sufficient;

8. Plaintiff also be awarded litigation costs and reasonable attorney's fees as allowed by federal and state law;

9. Plaintiff also be awarded post-judgment interest until judgment is paid; and

10. For any further relief, special or general, legal or equitable which Plaintiff may show herself entitled to receive.

Respectfully Submitted,

/s/ John E. Schulman
**John E. Schulman, Esq.**
State Bar No. 17833500
jschulman@schulmanlaw.com
**Margaret K. Schulman, Esq.**
State Bar No. 17833900
mschulman@schulmanlaw.com
THE SCHULMAN LAW FIRM, P.C.
6440 N. Central Expressway, Suite 210
Dallas, Texas 75206
Tel: 214-361-2580
Fax: 214-361-6580

**ATTORNEYS FOR PLAINTIFF**